# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

| | | |
|---|---|---|
| CHINA CUMMINGS, *on behalf of her minor child, K.C.*, Petitioner, | * | No. 24-45V |
| v. | * | Special Master Christian J. Moran |
| SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | * | Filed: July 13, 2026 |

Alison Haskins, Siri & Glimstad, LLP, Aventura, FL, for Petitioner;
Andrew Downing, Brueckner Spitler Shelts, Scottsdale, AZ, former counsel for Petitioner;
Alexa Roggenkamp, United States Dep't of Justice, Washington, D.C., for Respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

China Cummings claimed that an influenza ("flu") vaccine caused her child, K.C., to suffer cellulitis. Ms. Cummings was found entitled to compensation and received compensation through the National Childhood Vaccine Injury Compensation Program.

Ms. Cummings now seeks an award of attorneys' fees and costs. Ms. Cummings's pending requests includes work performed by the attorney who represented her originally, Andrew Downing, and the attorney who finished the case, Alison Haskins. As discussed below, a reasonable amount of attorneys' fees and costs is **$40,142.26**.

## I. Overview of Events in K.C.'s Life

In October 2022, when K.C. was five years old, she received a flu vaccine. The next day, Ms. Cummings brought her to an emergency room because of swelling and blistering in her arm where she had received the flu vaccine. The doctors diagnosed her with cellulitis.

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

## II. Procedural History

### A. Work of Mr. Downing and his Colleagues before Filing the Petition[2]

In October 2022, which is the month during which K.C. received the flu vaccine, Ms. Cummings reached out to Mr. Downing. Mr. Downing started the case but then the firm did not work again until April 2023. Presumably, this gap reflects a requirement for petitioners to establish that any injury caused by a vaccine was severe, such as lasting more than six months.

Throughout the remainder of 2023, paralegals working with Mr. Downing collected medical records. The paralegals included Danielle Avery and Alex Malvick. The primary attorney appeared to be Ann Allison.

### B. Work of Mr. Downing and his Colleagues after Filing the Petition

On behalf of Ms. Cummings, Mr. Downing filed a petition on January 12, 2024. The petition is about 10 double-spaced pages. On page 9, Mr. Downing reproduced a photograph showing scarring on K.C.'s left arm. After Ms. Cummings finished submitting her initial set of medical records, the case was assigned to the undersigned.

The first status conference was held on December 10, 2024. Mr. Downing suggested that the nature of K.C.'s dermatologic injury would probably not warrant extensive compensation. Thus, in his view, a settlement would be appropriate because extensive litigation would likely exceed the probable value of the case. Counsel for the Secretary requested additional information regarding the photograph showing scarring.

Although Mr. Downing made note of this request, he stopped representing Ms. Cummings as he ended his practice at the beginning of 2025. Before departing from the case, Mr. Downing requested an award of attorneys' fees and costs on an interim basis. He requested $20,534.76 in attorneys' fees and costs.

### C. Work of Ms. Alison and her Colleagues through the Award of Compensation

Ms. Haskins became counsel of record on January 8, 2025. She submitted information about the photographs. Exhibit 10, filed Feb. 10, 2025.

In a February 25, 2025 status conference, the Secretary invited Ms. Cummings to present a demand. But, the Secretary wanted to retain the deadline for his report.

Although the parties were at least open to exploring settlement, the Secretary still filed his report. The Secretary conceded that Ms. Cummings was entitled to compensation. Resp't's Rep., filed Mar. 3, 2025. Thus, the question was the amount of compensation.

Ms. Cummings sought compensation for K.C.'s pain and suffering as well as reimbursement of Medicaid expenses. Paralegals assisting Ms. Haskins spent a significant amount of time attempting to determine the current amount of any Medicaid lien.

---

[2] Information about Mr. Downing's work is found in Exhibit A to the Petitioner's Motion for Interim Fees, filed December 26, 2024.

In due course, Ms. Cummings presented information about the Medicaid lien that was satisfactory to the Secretary. The parties proffered the case. Ms. Cummings was awarded $15,000 in compensation for K.C.'s pain and suffering as well as $4,9178.14 to satisfy a Louisiana Medicaid lien. This decision required Ms. Cummings to become a guardian or conservator of K.C.'s estate. Decision, issued Aug. 13, 2025.

### D. Final Attorneys' Fees and Costs

Still representing Ms. Cummings, Ms. Haskins requested an award of attorneys' fees and costs via a motion filed on August 25, 2025. This motion referenced the pending request for interim attorneys' fees and costs and requested an additional $26,107.50. One item sought reimbursement of attorneys' fees and costs Ms. Cummings incurred in probate court.

Submitting his boilerplate response, the Secretary deferred to the undersigned's assessment regarding the reasonableness of attorneys' fees and costs. Resp't's Resp., filed Sep. 9, 2025. Ms. Cummings commented upon the Secretary's lack of objection. Pet'r's Reply, filed Sep. 16, 2025. With the submission of the reply, the question of attorneys' fees and costs is ready for adjudication.

## III. Analysis Part One: Eligibility for Attorneys' Fees and Costs

Petitioners who receive compensation are entitled to an award for their reasonable attorneys' fees and costs. 42 U.S.C. § 300aa–15(e)(1). As Ms. Cummings received compensation, she will be awarded her reasonable attorneys' fees and costs.

## IV. Analysis Part Two: Reasonable Amount of Attorneys' Fees and Costs

### A. Standards for Adjudicating Attorneys' Fees

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required.

### B. Mr. Downing and Colleagues

As just stated, the lodestar calculation contains two factors: (1) a reasonable hourly rate and (2) a reasonable number of hours. These components are analyzed separately.

#### 1. Reasonable Hourly Rate

Mr. Downing, Ms. Allison, and the various paralegals have requested compensation at rates that vary depending upon the year. The different rates have been accepted. Thus, they are accepted as reasonable here.

Although the rates are accepted as reasonable, Ms. Allison has charged a relatively high number of hours for work performed by an attorney seeking compensation at a relatively high hourly rate. This practice may be unreasonable. See Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 733 (2011) (noting that an experienced attorney who charges a relatively high hourly rate may be expected to perform some tasks in less time than inexperienced attorneys with lower hourly rates).

2. Reasonable Number of Hours

Although most of the hours are credited as reasonable, a few items are not. These are explained below.

Attorney Performing Paralegal Tasks. When an attorney does the work of a paralegal or administrative assistant, he or she should be paid a rate commensurate with the nature of the work. See Valdes v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 425 (2009); Riggins v. Sec'y of Health & Human Servs., No. 99-382V, 2009 WL 3319818, at *25 (Fed. Cl. Spec. Mstr. June 15, 2009), mot. for rev. den'd (slip op. Dec. 10, 2009), aff'd, 406 F. App'x 479 (Fed. Cir. 2011). One example of a paralegal task is reviewing medical records. In the undersigned's experience, paralegals usually are the first people to review the medical records. The paralegal's review allows an attorney to focus on critical items quickly.

Here, Attorney Allison did not follow this practice. She seems to have been the first person to evaluate the medical records substantively. See, e.g., entries for Jan. 5, 2024 and Jan. 9, 2024. Later, a paralegal prepared a chronology, which is a reasonable paralegal activity. See entry for May 22, 2024.

To account for Attorney Allison's charging attorney rates for paralegal work, **$2,000** is deducted.

Duplication of Attorney Tasks. Reasonable hours are not redundant. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).

Here, Attorney Downing charged time for reviewing a set of orders the undersigned typically issues and speaking to Ms. Cummings. See entry for Nov. 13, 2024. Attorney Downing was almost certainly familiar with these orders as the undersigned has issued similar orders in other cases involving Attorney Downing. Nevertheless, Mr. Downing's time is credited as reasonable.

However, Attorney Allison has also charged the same amount of time for reviewing the same set of orders. See entry for Nov. 13, 2024. This duplication is not reasonable. Further, Attorney Allison duplicated her own work by reviewing the orders a second time. See entry for Nov. 22, 2024.

To account for these duplications, **$500.00** is removed.

Excessive Paralegal Charges / Paralegal Billing for Clerical Work. Attorneys may not charge for clerical tasks because the attorney's hourly rate reflects overhead expenses, such as employing a secretary. Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38

Fed. Cl. 403, 407-08 (1997). Filing documents is a clerical task for which attorneys should not charge. See Guerrero v Sec'y of Health & Human Servs., No. 12-689V, 2015 WL 3745354, at *6 (Fed. Cl. Spec. Mstr. May 22, 2015) (citing cases), mot. for rev. den'd in relevant part and granted in non-relevant part, 124 Fed. Cl. 153, 160 (2015), app. dismissed, No. 2016-1753 (Fed. Cir. Apr. 22, 2016).

Here, three problems taint some of the entries that paralegals created. First, it is relatively easy to see that paralegals charged for clerical tasks such as finalizing and processing of submissions to court. See, e.g., entries for Jan. 17, 2024; July 11, 2024; Aug. 13, 2024. Another example is performing optical character recognition (aka OCR'ing) on documents. See entries for Aug. 6, 2024; Sep. 23, 2024. There is also a duplication for the September 17, 2024 entry.

The second type of issue is that the paralegal has not described the activity with sufficient clarity to understand whether the paralegal is using any specialized knowledge to accomplish the task. For example, paralegals have charged for "processing and proper intake of" various medical records. "Processing" appears to be a clerical function. If there is more to this task, the entry does not explain it.

The third type of issue, which relates to the other two, is that the paralegals have charged time that is excessive. For example, a paralegal charged 0.40 hours for each medical record request. While requesting records is a standard paralegal function, the charge of 0.40 hours exceeds what is reasonable based upon the undersigned's experience. Similarly, a paralegal charged 0.3 hours for reviewing scheduling orders. Although some amount of time could be reasonable, approximately 18 minutes is not.

To account for the unreasonable charges from paralegals, **$1,000** is removed.

Accordingly, a reasonable amount of attorneys' fees for Mr. Downing and colleagues is $16,248.50.

3. Mr. Downing's Costs

In addition to attorneys' fees, Ms. Cummings has requested reimbursement of the costs Mr. Downing incurred, $786.26. These costs concern the cost of acquiring medical records and the filing fee. They are reasonable.

**C. Ms. Haskins and Colleagues**

As noted earlier, after Mr. Downing stopped representing petitioners in the Vaccine Program, the case was transferred to a different law firm. Ms. Haskins became counsel of record. The pending August 25, 2025 motion seeks an award of reasonable attorneys' fees and costs. The methodology of evaluating an attorney's request for fees, the lodestar method, remains the same.

1. Reasonable Hourly Rate

Ms. Haskins has sought reimbursement at a rate of $525.00 per hour and paralegals have charged $195.00 per hour. These proposed rates are credited.

2. Reasonable Number of Hours

In general, most activities are reasonable. Creditable activities include Ms. Haskins's efforts becoming familiar with the case. Although Ms. Haskins duplicated some work performed by either Attorney Downing or Attorney Allison, this repetition is inevitable when a new firm takes over a case. Moreover, Ms. Haskins did not spend an excessive amount of time in learning about the case. Thus, all her introductory time is credited.

Likewise, all efforts to determine the amount of the Medicaid lien are credited. Ms. Haskins and a paralegal spent a large amount of time (valued at more than $3,000) tracking down information about the Medicaid lien. In the undersigned's experience, attorneys have often recounted that obtaining Medicaid lien information is difficult. Thus, the amount of time devoted to this task is not surprising.

A final reasonable item is Ms. Haskins's work with an attorney in Louisiana to facilitate Ms. Cummings being appointed guardian. The value of this work (approximately $2,500.00) is appropriate.

While those items are accepted in full, some other items require reduction.

Excessive Charges. On a handful of occasions, the charge associated with the task exceeds a reasonable amount. For example, a request for medical records from one facility does not usually take 0.4 hours. See entry for Feb. 14, 2025. On two occasions, Ms. Haskins charged 0.2 hours for reviewing a scheduling order and revising litigation strategy. See entries for April 14, 2025 and May 24, 2025. The phrase "revise litigation strategy" seems meaningless in this context as there appears to be no change in litigation strategy. Moreover, Ms. Haskins charged 0.1 hours for reading the same scheduling order. See entry for April 15, 2025.

Clerical Charges. Ms. Haskins and paralegals charged for paralegal tasks, such as filing documents and drafting exhibit lists. See entries for Jan. 8, 2025; Feb. 10, 2025 (twice); and Aug. 8, 2025. These should not be charged at all.

Attorney Performing Paralegal Tasks. Like Ms. Allison, Ms. Haskins spent time reviewing medical records. See, e.g., entries for Mar. 6, 2026 and Apr. 18, 2025. In the undersigned's experience, paralegals usually review medical records to highlight the important material to facilitate an attorney's (quick) review. See Exhibit 13 (Ms. Haskins's declaration) ¶ 14 (asserting that her firm using paralegals to make representation "as efficient and effective as possible"). Thus, Ms. Haskins's charges are excessive.

Preparation of the Fee Motion. Finally, Ms. Haskins and a paralegal spent more than five hours preparing the fee application. This amount is excessive given the relative brevity of the fee application. By way of comparison, the comparable fee application for Mr. Downing's work was prepared in about half the time.

Collectively, an approximate estimate for the unreasonable items totals **$3,000.00**. Thus, a reasonable amount for the work of Ms. Haskins and colleagues is $20,632.50.

3. Attorneys' Costs

Ms. Cummings also requests reimbursement for the costs Ms. Haskins incurred. The two items are one set of medical records ($75.00) and the work of the outside attorney for probate ($2,400.00). These are reasonable and credited in full.

## V. Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, the undersigned awards attorneys' fees and costs as follows: a lump sum of **$17,034.76** (representing $16,248.50 in attorneys' fees and $786.26 in attorneys' costs) to be paid through an ACH deposit to Mr. Downing's IOLTA account for prompt disbursement. The undersigned also awards attorneys' fees and costs as follows: a lump sum of **$23,107.50** (representing $20,632.50 in attorneys' fees and $2,475.00 in attorneys' costs) to be paid through an ACH deposit to Ms. Haskins's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.